UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER C. DOMINGO,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:20-cv-00733 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1984, applied on April 24, 2017 for SSI, alleging disability beginning December 27, 2014; later, the alleged onset date was amended to April 24, 2017. Administrative Transcript ("AT") 23, 104, 289. In 2006, she was in a serious car accident that fractured her neck and required spinal surgery. AT 30. In her application, plaintiff alleged she was unable to work

due to neck injury, back injury, chronic migraines, and arthritis. AT 104.

In a decision dated March 12, 2019, the ALJ determined that plaintiff was not disabled.[1]
AT 23-36. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since April 24, 2017, the application date.
>
> 2. The claimant has the following severe impairments: fractured spine and degenerative disc disease, status post two cervical spine fusions, C4-C6, and C6-C7, with bone graft at C7.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

finds that the claimant has the residual functional capacity to perform the full range of light work.

5. The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since April 24, 2017, the date the application was filed.

AT 25-35.

In alternative findings at step five, the ALJ found that there were other jobs existing in the national economy that plaintiff could perform. Specifically, the ALJ determined:

> The claimant was born on XX/XX/1984 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant has at least a high school education and is able to communicate in English. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills.
>
> In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform.

AT 35.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly evaluated the opinion evidence as to mental limitations and failed to incorporate mental limits into the RFC; and (2) the ALJ failed to properly consider plaintiff's left arm disorder when formulating the RFC.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Mental Limitations

Plaintiff asserts that the RFC should have included mental limitations, citing the opinions of examining psychiatrist Dr. Les Kalman and State agency medical consultant Dr. H. Amado. Plaintiff claims that the ALJ erred in evaluating these opinions and in concluding that plaintiff's mental impairments were non-severe.

1. Legal Standard for Applications Filed On or After March 27, 2017

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

4

The Ninth Circuit previously has required that, in order to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017); Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo, 871 F.3d at 675.

However, for disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because Plaintiff filed her SSI application on April 24, 2017, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

/////

2. <u>Analysis</u>

Plaintiff alleged she became disabled in April 2017. That month, she was treated for anxiety and began seeing a counselor for talk therapy. AT 294-297. In a June 2017 psychiatric consultation, she stated that her anxiety and PTSD symptoms had increased in recent months. AT 534. In November 2017, Dr. Kalman examined plaintiff and diagnosed her with major depressive disorder, panic disorder, anxiety and depression due to another medical condition, post-traumatic stress disorder, and anorexia by history. AT 340-343. Plaintiff continued to receive psychological counseling in 2018, describing anxiety since her 2006 car accident, feelings of depression, daily panic attacks, insomnia, isolation, nightmares, and flashbacks. AT 401-408, 527-532.

The ALJ found that plaintiff's "medically determinable impairments of [PTSD], bipolar disorder, and anorexia, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." AT 26.

<u>Dr. Kalman</u>

In reaching this conclusion, the ALJ partially credited Dr. Kalman's November 2017 opinion while rejecting other parts of the opinion. The ALJ found that "Dr. Kalman's objective findings appear valid. Examples are that the claimant's thought was logical and goal-directed, with no loose associations, no mood swings, and no emotional lability."[2] AT 31, citing AT 341-342. However, the ALJ continued,

> Dr. Kalman's opinion that the claimant has decreased ability to maintain regular attendance in the workplace and perform work activities on a consistent basis, and his conclusion that she had decreased ability to complete a normal work day or work week

---

[2] Similarly, the ALJ cited Dr. Kalman's objective findings in support of the determination that plaintiff was not limited in her ability to understand, remember, or apply information. The ALJ noted that, per Dr. Kalman in 2017, plaintiff "was alert and oriented to person, place, date, and situation; she recalled three of three objects after five minutes; she was able to repeat five digits forwards and five backwards; she could do serial 3's with no errors; she could add, subtract, and multiply; she recalled two of the past five Presidents, and her abstractions were intact. Dr. Kalman considered her intelligence average." AT 26; see AT 341-342.

> without interruption, are without support from any medical evidence of record, and are inconsistent with his own findings that the claimant performed satisfactorily on the several memory tests he gave her, that she could do arithmetic, that her insight and judgment were fair, and that her thoughts were logical and goal-directed.

AT 31, citing AT 341-342.

The ALJ found Dr. Kalman's findings of normal mental functioning consistent with the observations of another physician, Dr. Vijay Patel, who met with claimant three times in 2018 and noted each time that she was well-groomed, her thought process was linear, and her cognition was grossly intact.[3] AT 31, citing AT 528, 530, 532. The ALJ noted that plaintiff's statements to Dr. Kalman established she "can manage herself well most of the time," as she attested "that she did her own shopping, cooking, and housekeeping as she was able, that she managed her own transportation, cared for her own hygiene, and paid her own bills." AT 27, citing AT 342. The ALJ also observed at the hearing that plaintiff "understood and answered questions well." AT 27.

Rejecting Dr. Kalman's opined mental limitations, the ALJ found plaintiff to have only mild limitations in concentrating, persisting, or maintaining pace. AT 26-27. The ALJ found plaintiff's normal performance on memory tests, fair insight and judgment, and logical, goal-oriented thoughts to be "inconsistent" with Dr. Kalman's findings that she had a decreased ability to complete a normal work day or maintain regular attendance in the workplace. AT 27. The ALJ noted that plaintiff had never been medicated for attention deficit problems, and was able to understand and answer questions at the hearing on her claim. AT 27. "There is no evidence to support [Dr. Kalman's] opinion that she would have a decreased ability to maintain attendance," the ALJ concluded. AT 27.

In fact, there is some evidence that plaintiff could not complete a normal workday or maintain regular attendance: plaintiff's subjective testimony as to the debilitating effects of her mental symptoms. See AT 29 (noting plaintiff's 2017 statements to Dr. Kalman that she left her job in December 2016 due to pain and emotional distress; also noting plaintiff's hearing testimony of debilitating panic attacks). However, in an unchallenged finding, the ALJ found

---

[3] Dr. Patel also noted plaintiff's self-reported mental symptoms of anxiety, panic attacks, insomnia, depression, agoraphobia, and nightmares/flashbacks. See AT 530, 532.

7

plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms only partly credible "because the medical findings do not support the level of impairment that the claimant alleges she experiences." AT 30. The ALJ agreed with State medical consultant Betty Santiago, M.D., who assessed plaintiff at the Reconsideration level and "felt that Dr. Kalman's opinion relied too heavily on the claimant's reports of symptoms and limitations, . . . and . . . overestimated the severity of the claimant's restrictions at limitations." AT 32, citing AT 127-134 (Dr. Santiago's finding that records do not support finding of severe mental impairment, despite self-reported symptoms), AT 130 (Dr. Santiago's finding that Dr. Kalman's 2017 report was not consistent with the overall evidence).

The ALJ also credited the opinion of State psychological consultant Helen C. Patterson, Ph.D., who reviewed plaintiff's records at the Reconsideration level. "Dr. Patterson," the ALJ wrote, concluded that:

> the available records did not support the claimant having a severe mental impairment. Dr. Patterson explained that although the claimant self-reports symptoms, there were no objective observations of same, and the medical evidence of record sources only note diagnoses, and indicate the claimant is stable. Dr. Patterson also strongly weighed the claimant's lack of treatment for any mental conditions. Thus, the doctor found the conditions described by listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) were non-severe.[4] The undersigned agrees with this opinion, and finds it both supported by, and consistent with, the evidence of record.[5] Therefore, the undersigned found this opinion persuasive.

AT 32.

In sum, the ALJ articulated why he found Dr. Santiago's and Dr. Patterson's opinions to be supported by objective medical evidence, such as unremarkable mental findings on examination. The ALJ also articulated why he found these opinions consistent with other factors in the record, including Dr. Patel's observations in 2018; plaintiff's statements to Dr. Kalman that she could perform many activities of daily living such as shopping, cooking, and housekeeping;

---

[4] Citing AT 129.

[5] Citing AT 341-342 (Dr. Kalman's objective findings of normal mental functioning) and hearing transcript.

8

and plaintiff's demeanor at the hearing. The ALJ endorsed Dr. Patterson's reasons for finding plaintiff's mental impairments non-severe, including plaintiff's lack of treatment for mental conditions and her general stability, according to treatment notes. Insofar as the ALJ rejected portions of Dr. Kalman's 2017 opinion, plaintiff has not shown reversible error on this basis.

Dr. Amado

The ALJ also rejected the opinion of State psychological consultant H. Amado, M.D., who reviewed plaintiff's records at the Initial level. AT 33. Discussing this opinion, the ALJ wrote in part:

> Dr. Amado . . . opined that the claimant was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and that she was moderately limited in her ability to respond appropriately to changes in the work setting. The undersigned found no evidence to support these limitations. On the contrary, Dr. Kalman's consultative psychiatric examination found the claimant performed satisfactorily on several memory tests he gave her, that she could do arithmetic, that her insight and judgment were fair, and that her thoughts were logical and goal-directed. Dr. Kalman also found her abstractions were intact, and he considered her intelligence average. Dr. Kalman's findings (though not all aspects of his opinion, see above) were consistent with other medical evidence, such as the psychiatric evaluation on June 23, 2007, at which the clinician specifically noted that the claimant's memory was intact.[6]
>
> The undersigned therefore found that Dr. Amado's opinion was inconsistent with, and therefore necessarily inconsistent with, the medical evidence of record, and consequently concluded that Dr. Amado's opinion [was] not persuasive.

AT 33, citing AT 104-118.

The ALJ discounted this opinion for the same reasons he rejected similar portions of Dr. Kalman's opinion, noting an additional record of plaintiff's largely normal mental examination during the period of alleged disability. Because the ALJ articulated why he found Dr. Santiago's and Dr. Patterson's opinions to be supported by objective medical evidence and consistent with the overall record, as discussed above, plaintiff has not shown reversible error based on the mental RFC.

---

[6] Citing AT 534 (June 2017 treatment note).

9

B. Physical Limitations

Plaintiff claims the ALJ failed to properly consider her left arm pain and limitations when formulating the RFC.

As the ALJ noted in his decision, plaintiff first complained of pain in her left shoulder and arm in September 2017. AT 30, citing AT 450. The examining doctor's impression was that the pain came from "a left-sided cervical radiculopathy related to the C6-7 disc herniation." AT 30, citing AT 451. Plaintiff underwent spinal fusion surgery in January 2018 and returned for a follow-up examination in April 2018. At that visit, the ALJ noted,

> [s]he reported that her left arm symptoms had completely disappeared . . . The physical examination revealed her wound was well healed, her gait was normal, and that her arm and leg strength was good. The examiner wrote that the claimant had significant physical symptoms that were incapacitating, however, the claimant's radicular symptoms had disappeared, and with each follow-up visit she seemed to be getting a little better.[7] It is important that the claimant's left arm symptoms had completely disappeared, as the great majority of her symptoms, as documented in the September 22, 2017 examination, were in her left shoulder and left upper extremity.
>
> Therefore, although there is no question of the claimant's two surgeries for cervical spine impairments, the evidence of record strongly suggests that . . . as a result of the January 9, 2018 surgery that fused the C6 and C7 vertebrae, . . . the majority of the claimant's symptoms were eliminated.

AT 31.

As set forth above, plaintiff's left arm and shoulder pain appears to have lasted seven months and been largely eliminated by spinal surgery. Plaintiff has not met her burden to show that this alleged impairment lasted for a continuous period of not less than 12 months, as required by the Social Security Act. Thus, plaintiff has not shown reversible error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is granted;

---

[7] Citing AT 556.

and

3. Judgment is entered for the Commissioner.

Dated: June 28, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/domingo0733.ssi.ckd